IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LISA BARRERAS,
for JOHNNY BARRERAS,

       **Plaintiff,**

v.                                CIV 03-0970 LAM

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure *(Doc. 14)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion *(Doc. 15)*, Defendant's response to the motion *(Doc. 16)*, Plaintiff's reply to the response *(Doc. 17)* and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter "Record" or "R"). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion **DENIED**.

### I. Procedural History

Plaintiff, Johnny Barreras (now deceased and represented by his wife, Lisa Barreras), filed an application for Supplemental Security Income on March 28, 1997. *(R. at 161-166.)* In connection with his application, he alleged a disability since August 30, 1996, due to lack of peripheral vision in

both eyes, alcoholism, and orthopedic problems in his lower back, shoulders, right hand, and right knee. *(R. at 171.)* Plaintiff's application was denied at the initial and reconsideration levels. *(R. at 145, 146, 150-153, 156-158.)*

The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on November 5, 1997. *(R. at 81-103.)* Plaintiff was represented at the hearing by an attorney. *(R. at 83.)* On June 17, 1998, the ALJ issued his decision in which he found Plaintiff not disabled at step five of the required sequential analysis as set forth in 20 C.F.R. § 404.1520. The ALJ found that Plaintiff had severe impairments including a right knee patellar fracture, a left posterior popliteal fossa mass, and chronic low back pain, but that Plaintiff's alleged post traumatic stress disorder (hereinafter "PTSD") was not severe. *(R. at 65.)* Plaintiff's alcoholism was found to be not severe as medical records indicated it was resolved and no longer a problem. *(Id.)* The ALJ found Plaintiff retained a residual functional capacity (hereinafter "RFC") for a full range of light work with some physical, functional limitations. *(R. at 66, 68.)* Because Plaintiff could not return to his past relevant work with these limitations, the ALJ applied the Medical-Vocational Guidelines as a framework to determine Plaintiff was not disabled. *(R. at 69.)*

On June 22, 1998, Plaintiff requested a review of the ALJ's decision and on May 11, 1999, the Appeals Council granted Plaintiff's request for review. *(R. at 385-387.)* The Appeals Council remanded the case to the ALJ with instructions to re-evaluate Plaintiff's subjective complaints and credibility, obtain additional evidence concerning Plaintiff's PTSD, and if necessary, use a vocational expert (hereinafter "VE") to provide evidence on Plaintiff's limitations and their effect on potential jobs. *(R. at 385-386.)*

On October 20, 1999, a different ALJ conducted a second hearing. *(R. at 104-144.)* Plaintiff

2

was represented at the hearing by a non-attorney advocate.  *(R. at 106.)*  On May 26, 2000, the ALJ issued her decision in which she made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 404.1520: (1) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (2) claimant has an impairment or a combination of impairments considered "severe"; (3) these medically determinable impairments do not meet or medically equal one of the listed impairments; (4) the claimant's allegations regarding his limitations are not totally credible; (5) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (6) claimant has the residual functional capacity to perform a restricted range of light work; (7) claimant is unable to perform any of his past relevant work; (8) other work exists in significant numbers that the claimant is capable of performing; and (9) claimant is not under a "disability" as defined in the Social Security Act.  *(R. at 42-43.)*

After the ALJ issued her decision on May 26, 2000, Plaintiff filed a request for review.  *(R. at 31.)*  On August 15, 2001, Plaintiff's estate, represented by his widow, also filed a request for a review of the decision and submitted additional evidence.  *(R. at 12-13.)*  On June 27, 2003, the Appeals Council issued its decision denying the request for review *(R. at 7-10.)*, making the ALJ's decision of May 26, 2000 the final decision of the Commissioner.  Plaintiff's wife filed a complaint for court review of the ALJ's decision on August 19, 2003.  *(Doc. 1.)*

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."

*Andrade v. Sec'y of Health & Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting

*Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial

evidence is more than a mere scintilla of evidence but less than a preponderance.  *See, e.g., Sisco v.*

*U.S. Dep't of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).

A claimant has the burden of proving his or her disability, which is defined as the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than 12 months.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir.

1993); 42 U.S.C. § 423(d)(1)(A).  The Secretary has established a five-step process for evaluating

a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential

evaluation process, the claimant must show that he is not engaged in substantial gainful employment;

he has an impairment or combination of impairments severe enough to limit his ability to do basic

work activities; and his impairment meets or equals one of the presumptively disabling impairments

list in the regulations under 20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242,

243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering

his residual functional capacity, age, education, and prior work experience.  *See Gatson v. Bowen*,

838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing on October 20, 1999, Plaintiff was thirty-nine years old.  *(R. at*

*107.)*  He completed high school, four years of college, and truck driving school.  *(R. at 88-91, 109,*

*110.)*  During the fifteen years prior to the ALJ's decision, Plaintiff worked as a construction laborer

and a soldier.  *(R. at 193, 276.)*

Plaintiff's medical records are incomplete and the history of his early physical injuries are based largely on his own accounts.  Plaintiff reported he injured his right shoulder in 1989 while in the National Guard *(R. at 288.)*, injured his lower back while playing football as a youth *(R. at 378, 392.)* and further damaged his lower back due to an automobile accident in 1997.  *(R. at 288.)*  In 1995, Plaintiff suffered two broken fingers during an altercation with the police *(R. at 483)*, and in 1996 was assaulted and beaten with a baseball bat.  *(R. at 328, 329.)*  This beating resulted in a fractured patella of the right knee that required surgery and  has been a continuing source of pain for Plaintiff.  *(R. at 289.)*  This beating was also the source of his PTSD.  *(R. at 289, 378.)*  Plaintiff required pain medication and was on a long-term pain management program to control the back, knee, shoulder and hand pain.  *(R. at 464, 469.)*

Plaintiff also reported vision problems, specifically a lack of peripheral vision *(R. at 171, 393.)* and submitted eye exams but minus medical interpretation of the exams.  *(R. at 476-481.)*  The only statement by an optometrist states that his vision would not qualify Plaintiff for disability.  *(R. at 292.)*  Plaintiff reported a history of excessive use of alcohol while in the military and some continued use.  *(R. at 288, 377, 393.)*  There was a diagnosis of hepatitis B that required his family to receive injections.  *(R. at 375.)*

In 1997, Plaintiff began to consult Son Vi Nguyen, M.D. for depression, anxiety, problems

sleeping, and an inability to trust.  *(R. at 414.)*  Dr. Nguyen prescribed Paxil[1], Seroquel[2], and Trazodone.[3]  *(Id.)*  His diagnosis was major depression, recurrent and moderate; generalized anxiety disorder and paranoid personality disorder.  *(Id.)*  Plaintiff continued seeing Dr. Nguyen through February, 1999 when he changed to a veterans counseling program.  *(R. at 420.)*  At the final visit, Dr. Nguyen noted that Plaintiff "seems to do rather well, no significant problems except he still feels 'nervous' at times."  *(Id.)*

Plaintiff continued counseling for his PTSD with Mental Health Resources and continued his medication regime.  *(R. at 409.)*  In March, 1999, counselor Mary Beth Huberman assessed his condition as a moderate-severe social impairment.  *(R. at 410.)*  Huberman notes Plaintiff functions well within his home but is isolated outside the family due to anxiety and depression.  *(R. at 410.)*  Huberman also notes that at "times it appears he may exaggerate his symptoms somewhat."  *(Id.)*  Plaintiff's moderate to severe physical impairments play a large role in his isolation.  *(Id.)*  Huberman recommended long-term psychiatric services.  *(Id.)*

On January 14, 1998, Leonore A. Herrera, M.D. conducted a consultative physical

---

[1]Paxil (paroxetine) is in a class of drugs called selective serotonin re-uptake inhibitors.  Paroxetine affects chemicals in the brain that may become unbalanced and cause depression, panic or anxiety, or obsessive or compulsive symptoms.  Paroxetine is used to treat depression, obsessive-compulsive disorder, panic disorder, generalized anxiety disorder, social anxiety disorder (social phobia), PTSD and premenstrual dysphoric disorder.  *(WebMD).*

[2]Seroquel (quetiapine) is an antipsychotic medication.  It works by changing the actions of chemicals in the brain.  Quetiapine is used to treat the symptoms of psychotic conditions such as schizophrenia and mania associated with bipolar disorder.  *(WebMD).*

[3]Trazodone is an antidepressant medication.  It works by changing the actions of chemicals in the brain.  Trazodone is used to relieve symptoms of depression such as feelings of sadness, worthlessness, or guilt; loss of interest in daily activities; changes in appetite; tiredness; sleeping too much; insomnia; and thoughts of death or suicide.  *(WebMD).*

examination at the request of DDS.[4]  *(R. at 378-381.)*  The only physical functional impairments

noted by Dr. Herrera were difficulty with repetitive kneeling, squatting, stooping, and stair climbing

due to chronic knee pain and stiffness.  *(R. at 380.)*  She opined that Plaintiff might also have

difficulty with prolonged sitting, walking, or standing that could exacerbate pain in his knees or back.

*(Id.)* Dr. Herrera noted Plaintiff's ongoing treatment for PTSD following an assault but stated he did

not appear tearful or depressed and was appropriate in affect and extremely helpful during the exam.

*(Id.)*

On August 1, 1999, Robert L. Karp, M.D. conducted a comprehensive psychiatric

consultation at the request of DDS.  *(R. at 392-395.)*  Dr. Karp's impression of Plaintiff was of

dysthymia[5], alcohol abuse and dependence, history of multiple orthopedic problems, and assigned him

a Global Assessment of Functioning (hereinafter "GAF") of 65.[6]  *(R. at 395.)*  Dr. Karp found no

evidence of any symptoms of PTSD *(Id.)*, and noted that this "man seems to want to appear very sick,

and seems excited to be able to answer positively to many questions.  He looks pretty good and

doesn't appear anxious nor appear uncomplicated, and there is no evidence of flat affect or sadness,

but he states he is always nervous and feels sad."  *(R. at 394.)*  Dr. Karp also found

> no impairment in his ability to understand or remember basic instructions or to
> concentrate and persist at tasks of basic work, or to interact with the general public

---

[4]DDS or Disability Determination Services is the state agency with which the Social Security Administration has contracted to develop the record in Social Security claims at the initial and reconsideration levels.  *See* 20 C.F.R § 404.1519s.

[5]Dysthymia (chronic depression) is a less severe form of depression but the depression symptoms linger for a long period of time, perhaps years.  Those who suffer from dysthymia are usually able to function adequately, but are consistently unhappy.  *(WebMD)*

[6]A GAF score is a measurement of the clinician's judgment of an individual's psychological, social, and occupational functioning. *(DSM-IV-TR at 32).*  A GAF score of 65 (within the range of 61 to 70) is indicative of "some mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships."  *(Id. At 34).*

and/or coworkers and adapt to changes in the workplace.

*(R. at 395.)*

Until the time of his death, Plaintiff continued to attend counseling sessions at the Amarillo VA Medical Center Medical Health Clinic and the Vet Center and continued taking his medications. *(R. at 582.)* On July 1, 2001, Plaintiff died of a self-inflicted gunshot wound to the head. *(R. at 580.)*

## IV.  Discussion/Analysis

On May 26, 2000 the ALJ denied Plaintiff benefits at step five of the five-part sequential analysis for determining disability, finding that Plaintiff retained the RFC to perform a restricted range of light work.  *(R. at 41-42.)*  At step five, the burden of proof shifts to the Commissioner to show that Plaintiff is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *See Gatson*, 838 F.2d at 446.

Plaintiff alleges the ALJ made two errors in denying his claim for benefits.  *(Doc. 15 at 16, 18.)*  Specifically, Plaintiff argues that the ALJ: (1) erred in rejecting the treating psychiatrists' and therapists' opinions without making appropriate findings; and (2) failed to assess the mental impairment and non-exertional limitations resulting from it.  *(Id.)*

Defendant argues that the ALJ applied the correct legal standards and the decision that Plaintiff was not disabled is supported by substantial evidence.  *(Doc. 16.)*

## A.  ALJ Did Not Err in Evaluating Medical Source Opinions

Plaintiff alleges the ALJ improperly gave more weight to the opinion of the consultative psychiatric opinion of Dr. Karp than to Plaintiff's treating physicians and therapists.  *(Doc. 15 at 16.)*  The Court disagrees.  When determining the weight to give a medical opinion, an ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examination;

8

(2) the nature and extent of the treatment relationship; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Goatcher v. U.S. Dept. of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

As Defendant notes, the analysis of this alleged error is hindered by Plaintiff's failure to include references to specific cites in the record to support his arguments. *See S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (an appellant must provide the court with essential references to the record to carry his burden of proving error).

In assessing Plaintiff's mental status, the ALJ considered the clinical summary from Mental Health Resources prepared by Mary Beth Huberman MA/LPC. *(R. at 40, 409-410.)* Ms. Huberman describes Plaintiff as suffering from moderate to severe social impairment, notes Plaintiff seems to exaggerate his symptoms, and reports Plaintiff functions well at home with his children and household chores. *(Id.)* The diagnosis was Major Depressive Disorder, recurrent, moderate, and PTSD. *(Id.)* As a counselor, Ms Huberman was not an acceptable source and, therefore, her opinion is not accorded as much weight as an acceptable source such as a physician. *See* 20 C.F.R. §§ 416.913(a)(d); 416.927. It is unclear from the records how much direct contact Ms. Huberman had with Plaintiff.

The ALJ considered the consultative examination and opinion of Robert L. Karp, M.D. noting Dr. Karp diagnosed Plaintiff as having a dysthymic condition with no work-related impairments. *(R. at 40, 395.)* Dr. Karp found no evidence of symptoms of PTSD. *(Id.)* Although the examination by Dr. Karp was a one-time consultation, Dr. Karp's specialty is psychiatry. *(R. at 491.)* The ALJ

9

does discount the opinion of clinical specialist Dave Crane as being brief and conclusory.  *(R. at 40, 494.)*  Mr. Crane is also an unacceptable source and his opinion is inconsistent with and unsupported by evidence in the record, as the ALJ notes.  *(R. at 40.)*

Also considered are the records submitted by Son Nguyen, M.D., a psychiatrist who treated Plaintiff from November, 1997 to February, 1999.  *(R. at 40, 414-420.)*  Dr. Nguyen's diagnosis of major depression, generalized anxiety, and paranoid personality disorder is not inconsistent with the opinion of Dr. Karp.  *(R. at 414.)*  During the course of treatment, Dr. Nguyen noted that Plaintiff's affect was brighter and more relaxed *(R. at 415.)*, he was not suicidal and felt well enough to apply for a job *(R. at 417.)*.  Dr. Nguyen is a psychiatrist and treated Plaintiff for over a year.  *(R. at 414-420.)*

The ALJ does give Dr. Karp's opinion controlling weight regarding the primary diagnosis.  *(R. at 40.)*  As to Plaintiff's functional mental limitations, the ALJ considers the medical record as a whole and determines that Plaintiff

> has demonstrated that he retains the mental faculties to generally operate independently, appropriately, and effectively.  Although he has exhibited some measure of limitation in his ability to maintain social functioning and concentration, he retains the overall ability to perform tasks such as child-care and other domestic activities, which comport with the ability to sustain the mental requirements of simple work activities.  Considered as a whole, including the records submitted by S. Nguyen, M.D., the evidence supports that Mr. Berreras [sic] experiences only "slight" restrictions in his ability to conduct activities of daily living; "moderate" restrictions in his social functioning; and that he "often" exhibits deficiencies in concentration, persistence and pace.  I find no evidence of deterioration or decompensation in work or work-like settings.

*(R. at 40-41.)*

The Court finds the ALJ properly evaluated Plaintiff's mental impairments by considering the medical evidence and record in its totality and provided specific legitimate reasons for the evaluation

of the medical sources in the record.  The final responsibility for determining the ultimate issue of

disability is reserved to the Secretary.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

### B. The ALJ Included All of Plaintiff's Limitations in Hypothetical Questions

The Plaintiff's section heading alleges "the ALJ failed to assess the mental impairment and

nonexertional limitations resulting from it" but then argues the ALJ failed to include all of Plaintiff's

limitations in the hypothetical questions to the VE.  *(Doc. 15 at 18.)*  The Court has struggled to

follow Plaintiff's arguments but finds the disjointed allegations and failure to provide specific cites

to the record confusing and frustrating.  In spite of the section heading, Plaintiff's argument appears

to be that the ALJ failed to include all of Plaintiff's limitations in the hypothetical questions to the VE

and that is the issue the Court addresses.

After evaluating Plaintiff's physical and mental impairments, the ALJ found that Plaintiff

retained the physical and mental capacity to perform a restricted range of "light" work.  *(R. at 41.)*

The ALJ stated that the

> general restrictions are that he cannot perform work in excess of the "light" exertional
> level; and is restricted in his ability to use his right upper extremity; and his ability to
> conduct prolonged sitting and standing.  Further, Mr. Barreras is best suited for a
> vocational environment with limited contact with the public, co-workers and
> supervisors, and should be limited to simple and un-complex work instructions.

*(R. at 41.)*  At the hearing, the ALJ first elicited testimony from the VE that an individual with the

physical restrictions Plaintiff then had could not return to his past relevant work, which was rated at

the "very heavy" and "heavy" exertional levels.  *(R. at 139-140.)*

The ALJ then asked the VE if an individual of the same age, same vocational and education

experience as the Plaintiff, with the ability to lift and/or carry 20 pounds occasionally, 10 pounds

frequently; the ability to sit, stand or walk six hours in an eight-hour day; the ability to occasionally

kneel on the right side; and with no repetitive overhead lifting, could perform any work. *(R. at 139-140.)* The VE stated there were three jobs in the light exertional range including: (1) assembler of small products, DOT code 739.687-030[7]; (2) information clerk, DOT code 237.367-018; and (3) inspecting machine adjuster, DOT code 632.380-010. *(R. at 140.)*

The ALJ then changed the hypothetical to an individual with the same age, educational and vocational experience as the Plaintiff, with the ability to do light exertional work, but needing a sit/stand option (changing positions approximately every 30 minutes); with no repetitive pushing or pulling or grasping with the right upper extremity; with no contact with the public and limited contact with co-workers and supervisors; and limited giving and receiving of instructions (no more than three or four times a day). *(R. at 140-141.)* Under this hypothetical the VE precluded the jobs of information clerk and assembler of small products, but opined the job of inspecting machine adjuster remained available. *(R.at 141.)*

The ALJ then changed the second hypothetical from light work to sedentary and asked if there were any jobs available. *(R.at 141.)* The VE listed three jobs at the sedentary level, including: (1) telephone quotation clerk, DOT code 237.367-046; (2) call out operator, DOT code 237.367-014; and (3) surveillance system monitor, DOT code 379.367-010. *(R. at 142.)* The ALJ next asked the VE if there were added restrictions of simple and no complex tasks, would it change the jobs at either the light or sedentary levels and the VE replied "no." *(R. at 142.)*

Plaintiff also argues that the DOT descriptions of the available jobs require more skills than the Plaintiff was capable of performing. *(Doc. 15 at 19.)* However, Plaintiff's reliance on DOT as a definitive authority on job requirements is misplaced as the DOT itself cautions that its descriptions

---

[7]DOT refers to the Dictionary of Occupational Titles.

may not coincide with the content of jobs as performed in particular establishments or at certain localities.  *Dictionary of Occupational Titles*, vol. 1, at xiii.  The very reason a VE is employed in determining the specific requirements of a particular job is because of his ability to compare the requirements of a job with the particular impairments a claimant suffers and reach a reasoned conclusion whether the claimant can perform the specific job.  *See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  The ALJ properly relied on the VE's expertise in determining which jobs the Plaintiff was capable of performing.

The Court finds that the ALJ included all Plaintiff's impairments in the hypothetical questions posed to the VE and is satisfied Plaintiff could perform the jobs within the categories the VE listed, despite his impairments.  Therefore, the Court finds that the ALJ based her decision, that a significant number of jobs exist in the national economy that Plaintiff is capable of performing, on substantial evidence in the record.

### C.  Plaintiff's Subsequent Suicide Not Evidence of Severe Depression

Finally, Plaintiff's representative argues that Plaintiff's suicide, on July 1, 2001, is proof that he was severely depressed.  *(Doc. 15 at 20.)*  Plaintiff's suicide cannot be considered as evidence that Plaintiff was severely depressed during the relevant review period because the suicide does not relate to the period on or before the date of the ALJ's May 26, 2000 decision.  *See* 20 C.F.R. §§ 404.970(b) and 416.1470(b) (2003).  *See also, O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).  Plaintiff's suicide was over a year after the ALJ's decision and after a subsequent favorable ruling that he was under a disability beginning June 1, 2000.  *(R. at 8.)*  Plaintiff offers no evidence to support the allegation that Plaintiff's mental state in July, 2001 is evidence of his mental impairment during the review period before this Court.  Therefore, the Court rejects this alleged evidence as being outside

13

the relevant review period.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure *(Doc. 14)* is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**

14